In re Yousef S./Ruth E. GAMMOH, Debtors.

Yousef S. GAMMOH, et al., Plaintiffs,

v.

OHIO STUDENT LOAN COMMISSION, Defendant.

Bankruptcy No. 93–3015.
Related No. 92–34068–7.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Oct. 14, 1994.

Gordon Barry, Toledo, OH, for plaintiffs.

Matthew J. Thompson, Columbus, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court on Plaintiffs' Complaint to Determine Dischargeability of Debt, and Defendant's Motion to Dis-miss. A trial was held in which the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the written arguments of counsel, exhibits, relevant statutory and case law, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that Plaintiffs' partial repayment of student loans will not create undue hardship for Plaintiffs and Plaintiffs' dependents under 11 U.S.C. 523(a)(8)(B). Accordingly, the student loan of Plaintiff Yousef S. Gammoh will be reduced and found nondischargeable in the amount of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00). The student loan of Plaintiff Ruth E. Gammoh will likewise be reduced and found nondischargable in the amount of Two Thousand and 00/100 Dollars ($2,000.00).

### FACTS

Debtors Yousef S. Gammoh and Ruth E. Gammoh (hereafter "Mr. Gammoh" and "Mrs. Gammoh") are the plaintiffs in this adversary proceeding, seeking to have their student loans discharged pursuant to the undue hardship provision of § 523(a)(8)(B). The Plaintiffs are currently married and have two children, ages five years and three years. It appears the Plaintiffs are currently separated, and are intending divorce.

Mr. Gammoh has been employed as a machine operator for the past seven years, but is temporarily off work due to lumbar strain. Otherwise, he is in good health. Mrs. Gammoh cares for Plaintiffs' two children, but is otherwise unemployed. Except for an arthritic condition of her hand, she is also in good health. Plaintiffs' five year old son has experienced seizures in the past, but is currently seizure-free. Plaintiffs' younger child is in good health.

Mr. and Mrs. Gammoh each obtained student loans through the Student Loan Program to further their educations. Mr. Gammoh received three educational loans which he used to attend the University of Toledo from 1986 through 1991. Mr. Gammoh did not, however, complete his degree. His student loans totalled Eight Thousand Four

Hundred Three and 16/100 Dollars ($8,403.16) plus interest at the note rate of eight percent as of September 3, 1993. Mrs. Gammoh used her student loans to graduate from The University of Toledo in 1989 with an Associate Degree in Mental Health. Her student loan balance as of September 3, 1993 totalled Six Thousand Eight Hundred Fifty One and 87/100 Dollars ($6,851.87) plus interest at the note rate of eight percent.

To date, Mr. and Mrs. Gammoh have made a one time payment on these loans of Fifteen and 00/100 Dollars ($15.00).

### *LAW*

**11 U.S.C. § 105. Power of Court**

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**11 U.S.C. 523(a)(8)(B) Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents.

### *DISCUSSION*

Mr. and Mrs. Gammoh contend that their student loans should be found dischargeable on the basis that excepting such debt from discharge would impose undue hardship on themselves and their dependents pursuant to 11 U.S.C. § 523(a)(8)(B). The Defendant, the Ohio Student Loan Commission (hereafter "OSLC"), contends that the Gammohs have failed to meet their burden of proof, and therefore their debt should be exempt from discharge. Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding.

There is no clear definition of the concept of "undue hardship" in either the Bankruptcy Code or the legislative history behind 11 U.S.C. § 523(a)(8)(B). However, there are strong legislative and judicial policies in opposition to the discharge of student loans in bankruptcy. *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 132–133 (1977), *reprinted in* 1978 U.S.C.C.A.N. pp. 5787, 5918, 5919; *In re Brunner,* 46 B.R. 752 (S.D.N.Y.1985), *aff'd,* 831 F.2d 395 (2nd Cir.1987).

The determination of whether or not the repayment of a student loan debt will impose undue hardship on the debtor is left to the discretion and judgment of the court on a case by case basis. *In re Hemmen,* 7 B.R. 63, 64 (Bankr.N.D.Ala.1980). Case law has adopted a view of those circumstances which constitute undue hardship. Generally, the cases seem to indicate undue hardship contemplates unique and extraordinary circumstances, rather than mere hardship, financial adversity, or present inability to pay. *U.S. v. Brown,* 18 B.R. 219 (Bankr.D.Kan. 1982); *New York State Higher Education Services Corp. v. Kohn,* 5 B.C.D. 419 (Bankr. S.D.N.Y.1979); *In re Abrams,* 19 B.R. 64 (Bankr.D.Neb.1982). Consequently, the courts have developed a three part test for determining the facts and circumstances which constitute undue hardship under 11 U.S.C. § 523(a)(8)(B). *In re Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa.1979); *In re Albert,* 25 B.R. 98 (Bankr.N.D.Ohio 1982); *In re Bakkum,* 139 B.R. 680 (Bankr.N.D.Ohio 1992). This three-pronged approach consists of "mechanical", "good faith", and a "policy" tests. *Id.*

The mechanical test considers, among other things, the debtor's present employment and income, the debtor's capacity for future employment and income, and the

marketability of debtor's work skills in determining whether exempting debtor's student loans from discharge would impose undue hardship. *In re Frech,* 62 B.R. 235, 240 (Bankr.D.Minn.1986). This test also considers factors such as the debtor's health, the debtor's level of education, and the debtor's familial obligations. *In re Kammerud,* 15 B.R. 1 (Bkrtcy.S.D.Ohio. 1980). It is the debtor who bears the burden of showing the undue hardship which debtor and debtor's dependents will bear if the student loan is exempted from discharge. *Frech,* 62 B.R. at 241.

Plaintiffs argue that their current financial situation is depressed. They argue that Mr. Gammoh's yearly income, which declined from Nineteen Thousand One Hundred Five and 03/100 Dollars ($19,105.03) in 1989 to Fifteen Thousand One Hundred Twenty Six Dollars ($15,126.00) in 1991, is too low to repay student loans and support a family. Plaintiffs further claim that their financial condition is further exasperated by the fact that Mr. Gammoh has been temporarily off work due to lumbar strain. They also argue that Mrs. Gammoh is unable to work. Because Mrs. Gammoh cares for the Plaintiffs' two children, she has remained unemployed except for a brief period of seasonal work in 1991. Plaintiffs also contend that Mrs. Gammoh's ability to earn income is also impaired due to the arthritic condition of her hand.

The facts of this case at bar are similar to the facts found in *In re Silliman,* 144 B.R. 748 (Bankr.N.D.Ohio 1992). In *Silliman,* this Court held that although the debtor's employment and income at the time were minimal, the debtor failed to pass the mechanical test because the debtor's prospects for future employment were excellent. In particular, the debtor had no physical barriers to future employment and possessed valuable work skills.

The Court agrees with the Plaintiffs that their present income does not provide ample support to allow for the full repayment of their student loans. However, the Gammoh's current financial situation is not so dire that Plaintiffs cannot recover from the conditions which made their bankruptcy necessary, and make reduced payments on the loans. Primarily, Mr. Gammoh testified at the trial that his salary was once again on the rise, and the lumbar strain which has temporarily detained Mr. Gammoh has not been shown to be a permanent barrier to his future employment. Secondly, Mrs. Gammoh has not shown the arthritic condition of her hand to be any barrier to employment in the future. Furthermore, since Mrs. Gammoh successfully completed her associate degree in Mental Health, she now has valuable skills which should make her a marketable prospect for future employment. This Court thus finds that though Plaintiff's present ability to repay their student loans may be impaired, their prospects for future payments are much brighter.

■  The second test is one of good faith. The Court looks to whether the debtor has made a good faith effort to repay the loan, to renegotiate the loan, or to minimize expenses and perhaps maximize income. *See In re Holzer,* 33 B.R. 627 (Bankr.S.D.N.Y.1983). *In re Silliman,* discussed supra, is again illustrative of the law in this area. In that case this Court found a lack of good faith where the debtor worked only fifteen hours a week and made no attempt to pay her student loans or to renegotiate the terms of the loans. *Silliman,* 144 B.R. at 751. This Court further found that the burdens of raising debtor's dependent were not sufficient to offset her earning capacity in the future. *Id.*

This Court is persuaded that a similar lack of good faith should be found in the case at bar, where the Plaintiffs have made almost no attempt to repay their student loans. They have made only one payment to OSLC in the amount of Fifteen Dollars ($15.00), and have made no effort to renegotiate their student loans with OSLC.

This Court is also not convinced that Mr. and Mrs. Gammoh have made a good faith effort to maximize their income. In particular, Mrs. Gammoh has no bar to employment, and therefore could substantially increase Plaintiffs' overall earning capacity by seeking a job. Mrs. Gammoh's salary should offset the cost of childcare for Plaintiffs' children, and therefore the burden of childcare should not be an impediment to her seeking employment.

The third test is a policy test, where the Court considers whether allowing the discharge of a particular student loan in bankruptcy would constitute an abuse of the bankruptcy process and would thereby frustrate congressional policy. Congress designed § 523(a)(8)(B) to "remedy an abuse by students who, immediately upon graduation, filed petition for bankruptcy and obtained a discharge of their educational loans". *In re Merchant*, 958 F.2d 738, 740 (6th Cir.1992). Furthermore, Congress enacted § 523(a)(8)(B) due to "the perceived rise in bankruptcy filings by students on the brink of lucrative careers". *In re Pelkowski*, 990 F.2d 737, 742 (3th Cir.1993). Consequently, in order to determine whether a student filed bankruptcy primarily for the purpose of discharging their student loans, the Court considers what percentage of the total debt in bankruptcy the educational loan debt constitutes. *In re Brown*, 18 B.R. at 223.

Case law indicates that a consideration of the percentage of the student loan debt present in the debtor's total liability, combined with a consideration of the timing of the bankruptcy filing, is the appropriate view to assessing whether or not the debtors have attempted to abuse the student loan system. *In re Silliman*, 144 B.R. at 751–52. Where the debtor fails both the mechanical test, the good faith test, and has student loans representing a high percentage of the entire debt in bankruptcy, the student loans are clearly nondischargeable. However, in some cases the debtors may pass some tests but fail others, and here the discretion of the Court is empowered. *Id.* at 752.

There is nothing to suggest that Plaintiffs filed bankruptcy primarily to avoid repaying their student loan obligations. Furthermore, the Gammoh's student loans represent only twenty-one percent (21%) of their total debt in bankruptcy. This Court is therefore not convinced that the Gammohs have filed bankruptcy primarily to obtain a discharge from their student loans. This does not mean, however, that the Gammoh's poor showing under the mechanical and good faith tests are overlooked. Rather, the Court can look at the policy test in mitigating the amount to be found nondischargeable.

In *In re Cheesman*, 25 F.3d 356 (6th Cir. 1994), the Court of Appeals affirmed the Bankruptcy Court's decision discharging all of the Cheesman's student loan debt even though their student loans represented forty-nine percent (49%) of their total debt in bankruptcy. However, the court redocketed the case for eighteen months when the court would re-examine whether discharge was still appropriate. The court found the debtors to have a genuine inability to significantly change their financial status in the future, and to have made a good faith effort to repay their student loan obligations, thus effectively passing the mechanical test and the good faith test. *Id.* at 359. Furthermore, the court found no evidence that the Cheesman's filed bankruptcy primarily to be excused from their student loan obligations. *Id.* In light of these considerations, the Court of Appeals affirmed the Bankruptcy Court's decision to allow the discharge of the entire student loan debt even in the face of the high percentage of debt represented by the student loans, as well as its decision to review the case in eighteen months to see if discharge was still appropriate. The Court of Appeals held that the Bankruptcy Court exercised its broad equitable powers under § 105(a) in a manner consistent with the Bankruptcy Code. *Id.* at 360.

A similar use of the Court's discretion is warranted in the case at bar. This Court recognizes that Mr. and Mrs. Gammoh's current financial situation, including Mr. Gammoh's temporary health problems, and the Gammohs' upcoming divorce, as mitigating factors in reducing the amount of their student loan debt to be found nondischargeable. Furthermore, there is no indication that the Gammohs were attempting to abuse the student loan system by having their loans discharged immediately upon graduation or prior to their embarking on lucrative careers. Accordingly, this Court in its discretion finds that a reduction in the amount to be exempted from discharge is appropriate in the present case.

This Court rules that the student loan of Plaintiff Yousef S. Gammoh will be reduced and found nondischargeable in the amount of Three Thousand Five Hundred and 00/100

Dollars ($3,500.00). The student loan of Plaintiff Ruth E. Gammoh will likewise be reduced and found nondischargable in the amount of Two Thousand and 00/100 Dollars ($2,000.00).

In reaching the conclusions found herein, the Court has considered the demeanor of all the evidence, exhibits and arguments of counsel regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

It is further **ORDERED** that the student loans of Plaintiff Yousef S. Gammoh be, and are hereby, held *NONDISCHARGABLE* in the amount of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) under 11 U.S.C. § 523(a)(8)(B).

It is further **ORDERED** that the student loans of Plaintiff Ruth E. Gammoh be, and are hereby, held *NONDISCHARGABLE* in the amount of Two Thousand and 00/100 Dollars ($2000.00) under 11 U.S.C. § 523(a)(8)(B).

It is further **ORDERED** that all of the remainder of the Plaintiffs' educational loans and all interest be, and are hereby, held to be *DISCHARGEABLE* under 11 U.S.C. § 523(a)(8)(B).

It is further **ORDERED** that the parties submit to the Court, within fourteen (14) days, a schedule for repayment of the above debt within six (6) years of the date of this Order.